**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| R.S. *individually and on behalf of I.R., a minor*, | ) | CASE NO. 1:23-cv-01127 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| MEDICAL MUTUAL SERVICES, L.L.C.; CASE WESTERN RESERVE UNIVERSITY; and CASE WESTERN RESERVE UNIVERSITY BENEFITS PLAN, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

Plaintiff's Complaint (R. 1) raises the following causes of action: 1) Claim for Recovery of Benefits under 29 U.S.C. §1132(a)(1)(B), 2) Claim for Violation of MHPAEA[1] under 29 U.S.C. §1132(a)(3), and 3) Request for Statutory Penalties under 29 U.S.C. §1132(a)(1)(A) and (c). Defendants Case Western Reserve University and Case Western Reserve University Benefits Plan (collectively "CWRU") filed a Motion to Dismiss the Second Cause of Action. (R. 33). Defendant Medical Mutual Services, L.L.C. ("MMS") filed a Motion for Partial Judgment on the Pleadings regarding the Complaint's second and third causes of action. (R. 36). Plaintiff filed a combined Memorandum in Opposition (R. 40) to those motions. CWRU replied in support of

---

[1] The Mental Health Parity and Addiction Equity Act.

their Motion to Dismiss (R. 44), and MMS replied in support of their Motion for Partial Judgment on the Pleadings (R. 45). For the reasons stated below, the Court DENIES Defendants' Motions as they pertain to Count II and GRANTS Defendant MMS's motion dismissing Count III.

## I. Standard of Review

When ruling upon a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all the factual allegations contained in the complaint and construe the complaint in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *accord Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept a conclusion of law as true. Further,

> [u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L.Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such motions are assessed "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *See United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (*quoting Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021)).

## II.     Factual Allegations

Plaintiff R.S., an employee of Case Western Reserve University, is enrolled in their employee benefits plan, which is governed by 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). (R. 1, PageID# 2 ¶5). MMS is a third-party claims administrator for Case Western Reserve University's Benefits Plan. *See generally* R. 36-3. The agreement between CWRU and MMS establishes that MMS is not the Plan Sponsor or Administrator as defined by ERISA. (R. 36-3, PageID# 100).

R.S. brought this action following the denial of insurance claims for residential treatment submitted on behalf of her son, I.R. (R. 1, PageID# 2 ¶7). As detailed in Plaintiff's Complaint, I.R. has a long history of medical needs for which Plaintiff has sought treatment and services. (R. 1, PageID# 3–6 ¶12–30). Specifically at issue here, is treatment for I.R.'s behavioral disorders. *See generally* R. 1. Though I.R. has struggled with behavioral issues throughout his life, they were particularly exacerbated by the COVID-19 pandemic when he could no longer attend school. (R. 1, PageID# 6 ¶29). As these difficulties continued to progress, I.R. was sent to Northwest Passages, an in-patient facility. (R. 1, PageID# 6 ¶29, 30). While at Northwest

Passages, I.R. was diagnosed with anxiety, ADHD, autism, and a developmental coordination disorder. (R. 1, PageID# 6 ¶30). The treating physicians at Northwest Passages recommended that I.R. be placed in a residential treatment facility following his discharge. *Id.*

Plaintiff alleges there were no local treatment facilities equipped to meet I.R.'s needs, so he was admitted to Maple Lake Academy ("Maple Lake"), a residential treatment facility in Utah. (R. 1, PageID# 10 ¶40). I.R. moved into Maple Lake on January 11, 2021, and MMS denied payment for this treatment on January 14, 2021. (R. 1, PageID# 7 ¶31, 32). R.S. appealed the denial on July 6, 2021. (R. 1, PageID# 7–13 ¶33-51). Along with her appeal, she submitted multiple physician letters and a requested a copy of all plan documents. *Id.* On August 5, 2021, MMS upheld their denial of R.S.'s claim, prompting R.S. to request that the denial of payment be evaluated by an external review agency. (R. 1, PageID# 13, 14 ¶52, 53). When the external agency upheld the denial of payment, R.S. filed this suit. (R. 1, PageID# 15, 16 ¶57, 60, 61).

### III. Analysis

#### A. Count II Violation of MHPAEA under 29 U.S.C. § 1132(a)(3)

Both Defendants seek dismissal of Plaintiff's Count II, which alleges a violation of The Mental Health Parity and Addiction Equity Act (MHPAEA) under § 1132(a)(3) of ERISA. Defendants argue that Plaintiff's claim is duplicative of her denial of benefits claim under Count I, and therefore improperly brought under § 1132(a)(3), a catch-all provision meant to provide "other appropriate equitable relief" for harms not covered elsewhere in the statute.

Plaintiff, however, is pleading in the alternative, which is her right at this stage in the litigation. In Count I, Plaintiff pleaded that the terms of the Plan were wrongly applied to her claim, resulting in a wrongful denial of benefits. In Count II, Plaintiff

makes a different allegation—the Plan *as written* violates the MHPAEA. This claim asserts that even if the terms of the Plan are found to have been correctly *applied* to her benefits claims, foreclosing recovery under Count I, Plaintiff still has a case against Defendants. So, while Defendants are correct that it would be improper for Plaintiff to also allege that the terms of the Plan were improperly *applied* under § 1132(a)(3), that is not what Plaintiff has pleaded. The difference between the two claims is that Plaintiff is bringing the MHPAEA claim to challenge the plan as written, not as applied.

Although each of Plaintiff's claims may eventually bring the same result, affirming the denial of benefits or being paid benefits, they present distinct remedies. In Count II Plaintiff specifically requests "An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA." This is inherently different than the remedy Plaintiff seeks under Count I. Further, if the plan is written in violation of the MHPAEA, a claim under § 1132(a)(3) would be the primary means for Plaintiff to recover for that injury.

The Supreme Court has held that the terms of an ERISA plan cannot be changed under § 1132 (a)(1)(B) which only allows for recovery of benefits, or enforcement or clarification of rights under the plan. *See CIGNA Corp. v. Amara,* 563 U.S. 421, 436, 131 S. Ct. 1866, 1877, 179 L. Ed. 2d 843 (2011). Plaintiff's Complaint, however, presents allegations that cannot be remedied under § 1132 (a)(1)(B), rendering it inappropriate to dismiss Count II at this stage.

The Sixth Circuit has repeatedly held that simultaneous claims will be allowed "only where the [equitable] claim is based on an injury separate and distinct from the denial of benefits

*or where the remedy afforded by Congress under [§ 1132(a)(1)(B)] is otherwise shown to be inadequate."* Davis v. Hartford Life & Accident Ins. Co., 980 F.3d 541, 550 (6th Cir. 2020) *quoting Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (emphasis added). Though the Sixth Circuit has often affirmed dismissal of § 1132 (a)(3) claims for being duplicative to claims under § 1132 (a)(1)(B), courts generally do so only when it was clear the plaintiff has an adequate avenue for relief under § 1132 (a)(1)(B).[2] In addition, the Second, Eighth, and Ninth Circuit have all allowed plaintiffs' simultaneous causes of action under § 1132 (a)(1)(B) and § 1132(a)(3) to survive a motion to dismiss because it was too early to determine whether the plaintiff would have an adequate remedy under § 1132(a)(1)(B). *See Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209, 1225 (D. Utah 2019); *New York State Psychiatric Assoc., Inc. v. UnitedHealth Group*, 798 F.3d 125, 134–35 (2d Cir. 2015); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726–27 (8th Cir. 2014); *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 960–61 (9th Cir. 2016). The same rationale applies here, and the Court finds it appropriate to allow the claim to proceed.

Defendant CWRU also argues that claims under § 1132(a)(3) seeking to change the terms of the plan are only available when there has been fraud or duress. Certainly, that is a situation where a claim under § 1132(a)(3) would be appropriate, but the Supreme Court decision in *CIGNA Corp. v. Amara* does not hold that it is the only situation. *CIGNA Corp.*, 563 U.S. at 440–41. Rather, in *CIGNA* the Court discussed

---

2 *See, e.g., Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 615 (6th Cir. 1998); *Strang v. Ford Motor Co. Gen. Ret. Plan*, 693 F. App'x 400, 405 (6th Cir. 2017); *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 550 (6th Cir. 2020) (affirming the dismissal of Plaintiff's claim under § 1132(a)(3) because he had an avenue to challenge how the plan was applied under § 1132(a)(1)(B)); *Fenwick v. Hartford Life & Accident Ins. Co.*, 841 F. App'x 847, 859 (6th Cir. 2021) (affirming summary judgment for Plaintiff's claim under § 1132(a)(3) which alleged the plan was applied in a way that caused Plaintiff to be denied benefits).

contract reformation as an equitable remedy available under § 1132(a)(3), as Plaintiff is requesting here. *Id.*

Further, Defendant's reliance on *Rochow* is misplaced. In *Rochow*, the Sixth Circuit did not allow a claim for disgorgement of profits under § 1132(a)(3) when the plaintiff also brought a claim under § 1132(a)(1)(B) for withheld benefits. In that case the plaintiff's claims were based on the same injury—the plan being wrongly applied—and would have resulted in the plaintiff recovering more than the benefits otherwise due. Here, Plaintiff's claims are based on two different alleged injuries; either the terms of the Plan were incorrectly applied *or* the terms themselves are not compliant with the MHPAEA and need to be rewritten. Under either claim, Plaintiff is only seeking the benefits she claims she is due, not using § 1132(a)(3) to gain recovery beyond the alleged benefits.

Finally, although Defendant seeks to distinguish *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005) as not applicable because it involved a class action, the Court finds it directly applicable to this case. *Accord Gore v. El Paso Energy Corp. Long Term Disability Plan,* 477 F.3d 833 (6th Cir. 2007) (applying the principles from *Hill* to an action brought by a single plaintiff). As in *Hill*, Plaintiff's Count II is based on a theory of improper plan-wide claims handling procedures. The Sixth Circuit, in *Hill*, determined:

> In this case, an award of benefits to a particular Program participant based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that BCBSM is using an allegedly improper methodology for handling all of the Program's emergency-medical-treatment claims. Only injunctive relief of the type available under § 1132(a)(3) will provide the complete relief sought by Plaintiffs by requiring BCBSM to alter the manner in

7

>which it administers all the Program's claims for emergency-medical-treatment expenses.

*Hill*, 409 F.3d at 718. The same could be shown here regarding Defendants' handling of claims involving mental health treatments. Without further briefing on the issue the Court cannot make findings regarding Defendants' claims handling procedures. Therefore, the Court finds it is too early to dismiss Plaintiff's Count II.

The Court finds that Plaintiff has pleaded sufficient facts to show she may have an injury that cannot be remedied under § 1132(a)(1)(B), and therefore Defendants' Motions regarding Count II are DENIED.

**B. Count III Request for Statutory Penalties Under 29 U.S.C. §1132(a)(1)(A) and (c)**

It is well established that only plan administrators are liable for statutory penalties under § 1132(c). *See Hiney Printing Co. v. Brantner*, 243 F.3d 956, 960 (6th Cir. 2001); *VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992) ("Thus, we have held that an insurance company, which is not a plan administrator, cannot be liable for statutory damages for failure to comply with an information request.").

Here, Defendant MMS argues the record is clear that CWRU, not MMS, is the Plan Administrator. (R. 36-1, PageID# 87; R. 36-3, PageID# 100). Section 5.2 of the agreement between CWRU and MMS, titled "Employee Retirement Income Security Act (ERISA)", states:

>The parties agree that Medical Mutual Services, when performing its obligations under this Agreement, is not the Plan Sponsor or administrator as those terms are defined in the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"). Medical Mutual Services agrees to be the named fiduciary for the

8

> purposes of administering claims and hearing appeals of adverse benefit determinations only. It is the responsibility of the Plan Sponsor to inform Covered Persons of their ERISA mandated rights and to comply with any responsibilities, obligations, duties and notifications imposed upon the Plan Administrator by ERISA.

*Id.*

The definition of "plan administrator" in ERISA provides that the plan administrator is the "plan sponsor" unless otherwise specified in the plan. 29 U.S.C. § 1002(16)(A)(ii); *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002).

Plaintiff argues against dismissal, asserting there is no need to dismiss a cause of action that was not brought against MMS. (R. 40, PageID# 145). However, Plaintiff's Complaint did not specify that Count III was only brought against CWRU, and therefore the Court finds it necessary to rule on the issue. (R. 1, PageID# 23).

It is clear to the Court that MMS is not the plan administrator as defined in ERISA; and therefore, MMS cannot be liable to Plaintiff for unanswered document requests. It is well established in the Sixth Circuit that there is no legal basis for bringing a § 1132(c) claim against an entity who is not the plan administrator, therefore, Count III against Defendant MMS is dismissed. *See, e.g., Gore,* 477 F.3d at 843; *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002); *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 961 (6th Cir. 2001); *VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992).

Finally, CWRU's alleged liability under § 1132(c) for document requests sent to MMS presents an independent legal issue that is not raised or implicated by MMS's Motion to Dismiss Count III. Therefore, the Court declines to address the issue at this stage; and Defendant MMS's motion is GRANTED.

## IV. Conclusion

For the foregoing reasons, Defendant CWRU's Motion to Dismiss (R. 33) is DENIED and Defendant MMS's Motion for Partial Judgment on the Pleadings (R. 36) is DENIED with respect to Count II and GRANTED with respect to Count III.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: August 1, 2025